Tommy J. KIRK, Plaintiff-Respondent,

v.

CREDIT ACCEPTANCE CORPORATION,
Defendant-Appellant.

Court of Appeals

*No. 2010AP2573. Submitted on briefs October 2, 2012.
—Decided February 12, 2013.*

2013 WI App 32

(Also reported in 829 N.W.2d 522.)

636

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Lisa M. Lawless* and *Edward J. Heiser Jr.* of *Whyte Hirschboeck Dudek S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Eric L. Crandall* of *Crandall Law Offices, S.C.*, of Milwaukee.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. BRENNAN, J. After Tommy J. Kirk defaulted on his car loan, Credit Acceptance Corporation repossessed Kirk's car and filed an action for a deficiency judgment, which the circuit court later dismissed. Kirk then filed this lawsuit against Credit Acceptance, alleging that the manner in which Credit Acceptance repossessed the car and filed the deficiency action violated the Wisconsin Consumer Act ("WCA"). Credit Acceptance now argues that the circuit court erred when it: (1) denied Credit Acceptance's motion to dismiss; (2) granted Kirk summary judgment on his claim that Credit Acceptance violated the WCA by filing the deficiency action against Kirk when it knew or had reason to know that it had no right to a deficiency; (3) denied Credit Acceptance's motion to compel arbitration under the contract; (4) awarded Kirk both statutory and actual damages; and (5) awarded Kirk attorney's fees without a hearing. We affirm in part, reverse in part, and remand with directions.

## BACKGROUND

¶ 2. In May 2007, Kirk purchased a 1998 Buick Regal from Northwoods Motorcars, LLC. Kirk financed the purchase by entering into a retail installment

639

contract with Northwoods. The contract was secured by the car and was eventually reassigned to Credit Acceptance.

¶ 3. Under the terms of the contract, Kirk agreed to repay Credit Acceptance in monthly installments of $305.32, beginning on June 3, 2007, for thirty months. By July 17, 2007, Kirk had missed his first two payments and had defaulted on the loan. Credit Acceptance mailed Kirk and his co-signor each a Notice of Right to Cure Default to their respective addresses. Credit Acceptance sent the notices by certified mail and requested return receipts. The Notices of Right to Cure informed Kirk (and his co-signor) that he was in default on the loan and that to cure the default he needed to pay $610.64 by August 5, 2007. The Notice of Right to Cure sent to Kirk was returned "Unclaimed" and "Unable to Forward." (Some capitalization omitted.) The Notice of Right to Cure sent to the co-signor was returned "Unclaimed." (Some capitalization omitted.)

¶ 4. Credit Acceptance repossessed the car on April 8, 2008. The parties agree that the car was resold at auction for $1300.

¶ 5. On November 17, 2008, Credit Acceptance commenced an action against Kirk, seeking a deficiency judgment, that is, the difference between what Credit Acceptance alleged Kirk still owed on the loan less the amount Credit Acceptance received when it sold the car at auction. *See* Milwaukee County Circuit Court Case No. 08CV016147.[1] Kirk filed an answer and denied liability. *Id.* The parties then stipulated to dismiss the

---

[1] While the details of Credit Acceptance's action against Kirk are not in the record, we take judicial notice of the CCAP records in that action, which Credit Acceptance supplied in its appendix, and on which Kirk relied in his brief. *See* Wis. Stat. § 902.01 (2009–10) (CCAP is an acronym for Wisconsin's Con-

case without prejudice or costs to either party, subject to and in accordance with the terms of their stipulation. As such, on Credit Acceptance's motion, the circuit court ordered the case dismissed, on April 16, 2009. *Id.*

¶ 6. On November 17, 2009, seven months after the circuit court dismissed Credit Acceptance's deficiency action against Kirk, Kirk filed the present action against Credit Acceptance, claiming (as relevant to this appeal) that Credit Acceptance violated the WCA when it: (1) repossessed the car without notifying Kirk of his right to cure; (2) filed the deficiency action without notifying Kirk of his right to cure; and (3) filed the deficiency action when it knew or had reason to know that it had no right to a deficiency because it repossessed the car in violation of the parties' contract. Kirk requested actual and statutory damages, as well as costs, disbursements, and reasonable attorney's fees. On December 10, 2009, before Credit Acceptance had an opportunity to answer the complaint, Kirk filed a motion for summary judgment.

¶ 7. On January 4, 2010, before filing a response to Kirk's motion for summary judgment, Credit Acceptance moved to dismiss the complaint, arguing that: (1) all of Kirk's WCA claims were barred by the applicable statute of limitations; and (2) Kirk's claim that Credit Acceptance filed its deficiency action in violation of the WCA when it did not properly notify him of his right to cure failed to state a claim upon which relief could be granted. On February 5, 2010, at a hearing on the motion to dismiss, the circuit court ruled that the statute of limitations did not bar Kirk's

solidated Court Automation Programs. The online website reflects information entered by court staff.).

All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

claims arising out of Credit Acceptance's November 17, 2008 filing of the deficiency action. However, it implicitly found that the statute of limitations barred any claim prior to November 17, 2008.[2] As such, the circuit court partially denied Credit Acceptance's motion to dismiss. The court entered a written order memorializing its oral ruling on February 23, 2010.[3]

¶ 8. Also back on January 4, 2010, in its motion-to-dismiss brief, Credit Acceptance asserted that Kirk's claims fell within an arbitration agreement contained in the contract, and Credit Acceptance reserved the right to move to compel arbitration if the circuit court did not grant any portion of its motion to dismiss. Thereafter, on February 5, 2010, after the court partially denied Credit Acceptance's motion to dismiss, Credit Acceptance filed a motion to compel arbitration and stay proceedings in the action. Kirk opposed that motion.

---

[2] The circuit court stated, in relevant part:

[Kirk] may only maintain this lawsuit if the complaint alleges that Credit Acceptance violated [Wis. Stat. ch.] 421 to 427 no earlier than November 17 of 2008.

It is undisputed that the only allegation that [Kirk] makes relating to any time after November 17 of 2008 is Credit Acceptance's filing and maintenance of its [deficiency] lawsuit against [Kirk].

It is undisputed that Credit Acceptance repossessed the car in April 2008, prior to November 17, 2008.

[3] The circuit court's written order only says that Credit Acceptance's motion to dismiss was denied, and does not indicate that it was partially granted. However, it is clear from the hearing transcript that only Kirk's claims based on Credit Acceptance's November 18, 2008 filing of the deficiency action survived the motion to dismiss. Kirk's claim based upon Credit Acceptance's unlawful repossession of the car was effectively dismissed but is further discussed in the context of Kirk's surviving WCA claims based on the November 18, 2008 filing of the deficiency action.

642

¶ 9. On February 26, 2010, the circuit court held a hearing on the motion to compel arbitration. The circuit court denied the motion to stay proceedings for arbitration based on its findings that Credit Acceptance had waived its right to demand arbitration by filing and then dismissing the deficiency action, and by then failing to take any action for eighteen months until Kirk filed this action for WCA violations.

¶ 10. On April 26, 2010, the circuit court held a hearing on Kirk's previously filed motion for summary judgment, addressing Kirk's remaining claims that Credit Acceptance violated the WCA by filing the deficiency action. Kirk alleged that filing the deficiency action was a violation of the WCA on two grounds.

¶ 11. First, Kirk alleged that Credit Acceptance failed to notify him of his right to cure his default, pursuant to Wis. Stat. § 425.104, before repossessing the car and filing the deficiency action. Therefore, Credit Acceptance violated Wis. Stat. § 425.105(1) when it filed the deficiency action because § 425.105(1) prohibits "[a] merchant [from] . . . commenc[ing] any action . . . unless the merchant believes the customer to be in default . . ., *and then only upon the expiration of 15 days after a notice is given pursuant to s. 425.104*[.]" (Emphasis added.)

¶ 12. Second, Kirk alleged that Credit Acceptance violated the parties' contract when it failed to obtain a replevin judgment before repossessing the car. Therefore, according to the allegations in the complaint, Credit Acceptance violated Wis. Stat. § 427.104(1)(j) when it filed the deficiency action because § 427.104(1)(j) prohibits a merchant from attempting to collect a debt when it knows the right to collect that debt does not exist.

¶ 13. The circuit court first rejected Kirk's assertion that Credit Acceptance violated the WCA because Kirk did not *receive* the Notice of Right to Cure sent by

Credit Acceptance, finding that "nothing within [Wɪs. Sᴛᴀᴛ. § 425.104] itself requires a merchant to demonstrate that the consumer actually received a notice of the right to cure the default before resorting to self-help repossession." Rather, the circuit court concluded that the WCA only required Credit Acceptance to *send* the notice. Because the circuit court found that Credit Acceptance sent Kirk the Notice of Right to Cure required by the WCA before repossessing the car, the circuit court denied Kirk's motion for summary judgment on his claim that Credit Acceptance violated the WCA when it filed the deficiency action because it did so without providing the required Notice of Right to Cure.

¶ 14. However, Kirk had more success with his second basis for summary judgment. The circuit court found that the parties' contract required Credit Acceptance to obtain a replevin judgment before repossessing the car, and, because Credit Acceptance did not obtain the judgment, its repossession breached the parties' contract. Because the repossession breached the contract, the circuit court concluded that Credit Acceptance's deficiency action to recover the remainder of the amount Kirk owed under the contract was an attempt to collect an alleged debt arising from a consumer credit transaction when Credit Acceptance knew or had reason to know that the right to collect did not exist, in violation of Wɪs. Sᴛᴀᴛ. § 427.104(1)(j). As such, the circuit court granted Kirk's motion for summary judgment on that claim.[4]

---

[4] On its face, the circuit court's holding is not quite this clear. The circuit court stated, in relevant part:

Under the terms of the contract, therefore, Credit Acceptance had no right to resort to self-help repossession. Therefore, its repossession of the car in an attempt to obtain a deficiency judgment were potentially violations of [Wɪs. Sᴛᴀᴛ. §] 427.104(1)(j).

¶ 15. Following the circuit court's summary judgment decision, the court asked the parties to brief the issue of damages. Kirk asserted that he should be awarded $2300: $1300 in actual damages consisting of the money Credit Acceptance received when it sold the car at auction, plus $1000 in statutory damages. Credit Acceptance argued that Kirk was only entitled to $1000 in statutory damages.

¶ 16. The circuit court entered the order submitted by Kirk, awarding him $2300. The order further provided that the "judgment shall be modified to add the reasonable costs and attorney fees incurred by [Kirk], per WIS. STAT. § 426.308" and directed Kirk to submit a motion for an attorney's fees award by August 23, 2010.

¶ 17. After requesting an extension of time until August 31, 2010, to file his motion for attorney's fees, Kirk finally filed his motion on September 3, 2010, after the extended deadline granted by the court. In his notice of the motion, Kirk requested "[o]ral argument and a record of the argument." On September 14, 2010, without holding a hearing or providing Credit Acceptance an opportunity to respond, the circuit court entered an order granting Kirk's motion for attorney's fees in its entirety, to wit, $9275.05.

¶ 18. On September 21, 2010, upon being notified of the circuit court's attorney's fees order, Credit Accep-

---

The Court will grant summary judgment as to the repossession itself under the terms of the contract.

In context, it is clear (and the parties do not argue otherwise) that the circuit court was actually granting summary judgment on Kirk's claim that Credit Acceptance violated WIS. STAT. § 427.104(1)(j) by filing a deficiency action when it knew or had reason to know that it violated the parties' contract when it repossessed the car without obtaining a replevin judgment.

tance immediately moved to vacate the order on the grounds that: (1) Kirk's motion was late; and (2) the order granting the motion was entered without a hearing and without allowing Credit Acceptance an opportunity to respond. The circuit court immediately scheduled a hearing on Credit Acceptance's motion to vacate for November 12, 2010.

¶ 19. On October 19, 2010, before the hearing, Credit Acceptance filed its notice of appeal from the circuit court's orders granting summary judgment and attorney's fees. We review those orders of the circuit court in this appeal, although, as it bears on remand, we are aware from CCAP that the circuit court has already held a hearing on Credit Acceptance's motion to vacate and for fees, without issuing an order.

¶ 20. According to CCAP, on November 5, 2010, Credit Acceptance filed a brief in opposition to Kirk's motion for attorney's fees in the circuit court. On November 12, 2010, the circuit court held a hearing on the motion to vacate. On November 19, 2010, Credit Acceptance submitted a proposed order on the motion to vacate and the motion for attorney's fees along with a supporting letter. Although it held a hearing on November 12, 2010, the circuit court never issued an order ruling on the motion to vacate attorney's fees, and as such, that attorney's fees order still stands.

¶ 21. Additional facts are included in the discussion section as necessary.

## DISCUSSION

¶ 22. Credit Acceptance argues that the circuit court erred when it: (1) denied Credit Acceptance's motion to dismiss the complaint; (2) granted Kirk summary judgment on his claim that Credit Acceptance

646

violated the WCA by filing the deficiency action against Kirk when it knew or had reason to know that it had no right to a deficiency; (3) denied Credit Acceptance's motion to compel arbitration under the contract; (4) awarded Kirk both statutory and actual damages; and (5) awarded Kirk attorney's fees without a hearing. We address each in turn.

## I. Motion to Dismiss.

¶ 23. Credit Acceptance argues that the circuit court erred in denying its motion to dismiss Kirk's complaint in two ways. First, it contends that Kirk's WCA claims based upon Credit Acceptance filing the deficiency action are barred by the statute of limitations because those claims rely on events that occurred prior to November 17, 2008. Second, Credit Acceptance argues that, because it properly notified Kirk of his right to cure the default, the complaint failed to state a claim for a WCA violation within the statute of limitations and must be dismissed. We address each challenge in turn.

A. *Kirk's WCA claims based on the November 17, 2008 deficiency action are not barred by the statute of limitations.*

██
¶ 24. Credit Acceptance does not challenge the circuit court's ruling that Kirk's claims occurring on or after November 17, 2008, are not barred by the statute of limitations. Rather, Credit Acceptance argues that all of Kirk's claims, even those based upon Credit Acceptance's November 17, 2008 deficiency action, were based upon events that occurred *prior* to November 17, 2008, i.e., repossessing the car and sending the Notice

647

of Right to Cure. Therefore, Credit Acceptance argues that all of Kirk's claims are barred by the statute of limitations and that the circuit court should have granted Credit Acceptance's motion to dismiss. Credit Acceptance cites to no authority for its argument that the statute of limitations is triggered by events other than the filing of the deficiency action. We review statute of limitations issues *de novo. Willowglen Academy-Wisconsin, Inc. v. Connelly Interiors, Inc.*, 2008 WI App 35, ¶ 9, 307 Wis. 2d 776, 746 N.W.2d 570.

¶ 25. As relevant here, WIS. STAT. § 425.307(1) states: "Any action brought by a customer to enforce rights pursuant to [WIS. STAT.] chs. 421 to 427 shall be commenced within one year after the date of the last violation of chs. 421 to 427[.]" The "violation" Kirk claims is the filing of the deficiency action itself, either because Credit Acceptance filed the deficiency without providing Kirk with the requisite Notice of Right to Cure, a violation of WIS. STAT. § 425.105, or because Credit Acceptance filed the deficiency action when it knew or had reason to know that it had no right to a deficiency judgment, a violation of WIS. STAT. § 427.104(1)(j). Either way, filing the deficiency action is the "violation," not the failure to provide the Notice of Right to Cure or the repossession itself. As such, Credit Acceptance's assertion that Kirk's claims based upon the deficiency action are barred by the statute of limitations is wholly without merit.

*B. Credit Acceptance is not entitled to dismissal of Kirk's entire complaint even if the Notice of Right to Cure was proper because Kirk had another pending claim.*

¶ 26. In a perplexing argument, raised in the statute of limitations context, Credit Acceptance argues

648

that because the circuit court ruled at summary judgment that the Notices of Right to Cure that Credit Acceptance sent to Kirk and his co-signor were proper, there was no WCA violation and Kirk's entire complaint should have been dismissed for failure to state a timely claim.[5] In so arguing, Credit Acceptance ignores the second basis on which Kirk asserts a WCA violation—Credit Acceptance's failure to obtain a replevin judgment before repossessing the car and filing the deficiency action. As we conclude in section II below, Kirk sufficiently pled a WCA violation for the filing of the deficiency action based on Credit Acceptance's failure to obtain a replevin judgment before repossessing the car and filing the deficiency action. Proper Notices of Right to Cure do not affect the validity of that claim. As such, the circuit court did not err when it failed to dismiss Kirk's complaint in its entirety when it found that the Notices of Right to Cure were properly sent.

## II. Summary Judgment.

■

¶ 27. In his complaint, Kirk also alleged that Credit Acceptance breached the parties' contract when it failed to obtain a replevin judgment before repossessing the car; as such, Credit Acceptance violated WIS. STAT. § 427.104(1)(j) when it filed the deficiency action because § 427.104(1)(j) prohibits a merchant from attempting to collect a debt when it knows or has reason

---

[5] We need not address Credit Acceptance's related, alternative argument that, even if its Notice of Right to Cure was improper, it was a mere procedural deficiency which could be cured by a later refiling, and that Kirk waived any objection to refiling when he stipulated to the voluntary dismissal of the deficiency action pursuant to WIS. STAT. § 805.04, because of our conclusion in section II below.

to know that the right to collect that debt does not exist. At the summary judgment hearing, after reviewing the contract and § 427.104(1)(j), the circuit court concluded that the parties' contract plainly required Credit Acceptance to obtain a replevin judgment before repossessing the car and, because it did not obtain that judgment, Credit Acceptance breached the contract when it repossessed the car and violated the WCA when it filed the deficiency action.

■■■■■

¶ 28. Credit Acceptance now argues that the circuit court erred in concluding that the parties' contract required it to obtain a replevin judgment prior to repossessing the car. Construction of a contract is essentially a question of determining the intent of the parties. *Armstrong v. Colletti*, 88 Wis. 2d 148, 153, 276 N.W.2d 364 (Ct. App. 1979). Where the terms of the contract are plain and unambiguous, we will construe it as it stands. *Hortman v. Otis Erecting Co.*, 108 Wis. 2d 456, 461, 322 N.W.2d 482 (Ct. App. 1982). If, however, we determine that the terms of a contract "are reasonably or fairly susceptible to more than one construction," we will conclude that they are ambiguous. *See Katze v. Randolph & Scott Mut. Fire Ins. Co.*, 116 Wis. 2d 206, 213, 341 N.W.2d 689 (1984). "Whether a contract is ambiguous is itself a question of law" that we review *de novo. Wausau Underwriters Ins. Co. v. Dane Cnty.*, 142 Wis. 2d 315, 322, 417 N.W.2d 914 (Ct. App. 1987).

¶ 29. In its brief, Credit Acceptance reproduces the relevant contract terms thusly, and makes the following argument:

> **Repossession of the Vehicle. [A]** If You default and We have received an entry of judgment for the recovery of the Vehicle, We may take

(repossess) the Vehicle from You after We give You any notice the law requires. **[B]** To repossess the Vehicle, We can enter Your property, or the property where the Vehicle is stored, so long as it is done peacefully and the law allows it.

Terms **[A]** and **[B]**, above, address different situations. Sentence **[A]** informs that Credit Acceptance may go to court to obtain a judgment of replevin, and that it may repossess the vehicle after providing any notice the law requires. Because it is a court proceeding, the entitlement to a judicial order of possession will be determined by the court, under applicable law. After receiving the court order, repossession may occur after any necessary notice is provided.

Term **[B]**, on the other hand, describes what Credit Acceptance "*can*" do with respect to repossessing the vehicle. Whereas term **[A]** describes what Credit Acceptance "*may*" do to repossess the vehicle (with a court order, i.e., with the court's permission; thus the word "may"), term **[B]** describes what Credit Acceptance "can" do to repossess – without any mention of a court order.

(All emphasis and brackets in Credit Acceptance's brief; record citations omitted.)

¶ 30. Credit Acceptance's reading of the contract terms in nonsensical, and its reproduction of the contract is somewhat misleading. In the actual contract, the [A] and [B] that Credit Acceptance refers to do not exist, a fact that Credit Acceptance does not acknowledge in its brief.[6] Rather, the contract reads as follows:

**Repossession of the Vehicle.** If You default and We have received an entry of judgment for

---

[6] We remind counsel for Credit Acceptance of her responsibility to ensure that her brief possesses the proper candor to a tribunal. *See* SCR 20:3.3(a)(1).

651

the recovery of the Vehicle, We may take (repossess) the Vehicle from You after We give You any notice the law requires. To repossess the Vehicle, We can enter Your property, or the property where the Vehicle is stored, so long as it is done peacefully and the law allows it.

¶ 31. The contract plainly states that Credit Acceptance can only repossess the car "[i]f You default *and We have received an entry of judgment for the recovery of the Vehicle, . . .*" (Emphasis added.) There are two requirements for repossession clearly stated and joined by "and": (1) default and (2) a judgment. The language which follows the first comma explains how Credit Acceptance can go about repossession once it has obtained a judgment for recovery of the car. The fact that it is a comma, rather than a period, plainly expresses that the words following the comma describe the method of repossession as described before the comma. There are no subheadings suggesting an either-or situation, that is, either get a replevin judgment or just give notice. Credit Acceptance's suggestion otherwise is disingenuous.

¶ 32. We conclude the contract language is unambiguous. Thus, Credit Acceptance's repossession of the car without a judgment violates both the contract and the statute because WIS. STAT. § 427.104(1)(j) prohibits Credit Acceptance from attempting to collect a debt when it knows or has reason to know that it has no right to collect that debt.

¶ 33. But Credit Acceptance further argues that the language in the repossession clause above must be read in conjunction with the language in the arbitration clause below. When that is done, Credit Acceptance argues, it becomes clear that the parties' intent was to permit self-help repossession. In so arguing, Credit Acceptance relies on the following contract language in the arbitration clause:

> The institution and maintenance of any action for judicial relief or exercise of self-help remedies shall not waive the right to submit any Dispute to arbitration, including any counterclaim asserted in any such action, and including those controversies or claims arising from the exercise of any such judicial relief or the exercise of self-help remedies.

¶ 34. We fail to see how the mere statement in the arbitration clause that the "exercise of self-help remedies" can be arbitrated, *authorizes* self-help repossession without a prior replevin judgment, contrary to the *express* prohibition of the same in the parties' contract. Arbitration is a *process* for resolving disputes arising out of a contract. It is not the contract itself. As the Agreement to Arbitrate section clearly states in the first two sentences: "This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury."

¶ 35. As set forth above, the plain language in the parties' repossession clause explicitly prohibited Credit Acceptance from resorting to self-help repossession under the circumstances of this case. The language in the repossession clause is not reasonably susceptible to more than one construction, and nothing in the arbitration clause explicitly contradicts that language. Contrary to the Dissent's contention in its ¶ 5, we do not agree that by complying with the Notice of Right to Cure requirements of Wis. Stat. §§ 425.205(1g) and 425.206(1)(d), Credit Acceptance complied with the statute. In breaching the parties' contract by repossessing Kirk's vehicle without a replevin judgment, Credit Acceptance violated Wis. Stat. § 427.104(1)(j).

¶ 36. In sum, the contract plainly required Credit Acceptance to obtain a replevin judgment before repossessing the car, and it is undisputed that Credit Acceptance did not obtain that judgment. Consequently, we agree with the circuit court that Credit Acceptance violated Wis. Stat. § 427.104(1)(j) when it filed the deficiency action because when it filed the action Credit Acceptance knew or had reason to know that it had no right to the deficiency.

## III. Right to Arbitrate.

¶ 37. Next, Credit Acceptance complains that the circuit court erred when it denied Credit Acceptance's motion to stay the action to permit the parties to arbitrate. The circuit court concluded that Credit Acceptance waived its right to invoke the contract's arbitration clause when it filed the deficiency action. We conclude that: (1) the arbitration clause here did not require arbitration of Kirk's WCA claims, because they are separate, distinct, and non-waivable claims; and (2) even if the arbitration clause here included Kirk's WCA claims, Credit Acceptance waived arbitration. Accordingly, we affirm the circuit court.

■

¶ 38. The interpretation of a contract is a question of law we review *de novo. See Dairyland Greyhound Park, Inc. v. Doyle*, 2006 WI 107, ¶ 16, 295 Wis. 2d 1, 719 N.W.2d 408. Whether a contract provision is ambiguous is a question of law. *See Moran v. Shern*, 60 Wis. 2d 39, 46–47, 208 N.W.2d 348 (1973). Contractual language is ambiguous when it is "reasonably or fairly susceptible of more than one construction." *Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990).

¶ 39. The parties' arbitration clause permitted any party to elect to have a dispute decided by an arbitrator. The clause defined "Dispute" as follows:

> A "Dispute" is any dispute, controversy or claim between You or us arising out of or in any way related to this Contract, or any default under this Contract, or the collection of amounts due under this Contract, or the purchase, sale, delivery, set-up, quality of the Vehicle, or any product or service included in this Contract. "Dispute" includes contract claims, and claims based on tort or any other legal theories. Either You or we may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes brought later in the lawsuit.

■

¶ 40. Credit Acceptance argues that the clause language encompasses Kirk's lawsuit. Nowhere though does Credit Acceptance explain what issue it seeks to arbitrate. Presumably, Credit Acceptance is arguing that the issue to be arbitrated is whether it violated the WCA by its conduct. Thus, the issue for arbitration is not whether the parties performed properly under the contract, but rather, whether a separate and distinct consumer protection statute was violated by that conduct. It is not a matter of making contract payments or returning the car. The question for the arbitrator is whether Credit Acceptance did, or did not, violate the WCA. And even if the proof of a WCA violation entails proof of some of the contract actions, the ultimate issue is distinctly different. The arbitration clause language does not apply to the separate and distinct question of whether Credit Acceptance violated Wisconsin's consumer protection act.

¶ 41. But even if the arbitration clause here is construed to include WCA claims, Credit Acceptance waived the right to arbitration by its conduct pursuing judicial remedies, dismissing them, and then doing nothing for over nine more months and only seeking arbitration when Kirk filed his separate, WCA, claims.[7] Whether a party's conduct constitutes a waiver of the right to arbitrate presents a mixed question of fact and law. *Meyer v. Classified Ins. Corp. of Wis.*, 179 Wis. 2d 386, 396, 507 N.W.2d 149 (Ct. App. 1993). We set aside the circuit court's findings of fact only if they are clearly erroneous. *Id.* "However, the application of the facts to a legal standard, such as waiver, is a question of law that we review independently of the [circuit] court." *Id.*

¶ 42. "Wisconsin courts have recognized that there are circumstances where a party may be deemed to have waived arbitration." *Id.* at 392. Our supreme court has set forth the following rule to help courts determine if arbitration has been waived:

> Any conduct of the parties inconsistent with the notion that they treated the arbitration provision as in effect, or any conduct which might be reasonably construed as showing that they did not intend to avail themselves of such provision, may amount to a waiver thereof and estop the party charged with such conduct from claiming its benefits.

*Id.* (citing *City of Madison v. Frank Lloyd Wright Found.*, 20 Wis. 2d 361, 387, 122 N.W.2d 409 (1963)) (brackets omitted).

---

[7] Credit Acceptance's deficiency action was dismissed on April 16, 2009. Kirk filed his WCA claims on November 17, 2009, and Credit Acceptance did not file its motion to compel arbitration until February 5, 2010.

¶ 43. Keeping that rule in mind, the circuit court made the following findings when concluding that Credit Acceptance had acted inconsistent with the contract's arbitration clause:

> Credit Acceptance did file a suit seeking a deficiency judgment, even though by the terms of the agreement, that suit was referable to arbitration . . . . Credit Acceptance was perfectly willing to submit to seek judicial remedies against Mr. Kirk. At this point it should not be permitted to hide behind the shield of an arbitration clause.

¶ 44. Applying those facts to the law, we agree with the circuit court that Credit Acceptance waived its right to arbitrate the claims raised by Kirk. Credit Acceptance chose the judiciary as the forum in which to attempt to obtain the deficiency it alleged Kirk owes, settled that action by stipulation and dismissal, and then did nothing for just short of ten more months and then only in response to Kirk's WCA claim. Both Credit Acceptance's actions and inaction constitute conduct inconsistent with wanting arbitration. *See Frank Lloyd Wright Found.*, 20 Wis. 2d at 387.

¶ 45. Credit Acceptance argues that our case law holds that a party does not necessarily waive its right to arbitration simply by filing a lawsuit. *See id.* (" 'institution by the plaintiff of a suit on the contract does not constitute a waiver of the arbitration provisions thereof, at least if the suit is subsequently dismissed or discontinued by the plaintiff ") (citation omitted); *J.J. Andrews, Inc. v. Midland*, 164 Wis. 2d 215, 223–24, 474 N.W.2d 756 (Ct. App. 1991) (holding that the plaintiff did not waive the arbitration clause by commencing the lawsuit without requesting arbitration and then undertaking discovery before moving to stay for arbitration).

¶ 46. It is true that simply filing a lawsuit, *see Frank Lloyd Wright Found.*, 20 Wis. 2d at 387, or simply conducting discovery, *see J.J. Andrews*, 164 Wis. 2d at 223–24, before asking for arbitration do not constitute waiver. However, as we noted in *Meyer*, the issue of whether conduct constitutes waiver depends on the "overall evaluation of the applicant's involvement and conduct up to the time of [the] request [for arbitration]." *Id.*, 179 Wis. 2d at 397. In *Meyer*, we held that the following actions waived arbitration: the defendant failed to file a motion to stay for arbitration by the deadline for motion filing in the scheduling order; the case had been pending a long time; the case had advanced to the "number one jury trial case"; and the defendant had not included an arbitration request in its answer. *Id.* at 397–99.

¶ 47. Like in *Meyer*, the undisputed facts here are that Credit Acceptance filed a deficiency action against Kirk, reached a stipulated agreement with Kirk and dismissed its deficiency action, and then did nothing for over nine months. Only when Kirk sued Credit Acceptance in a separate action for damages due to Credit Acceptance's alleged WCA violations, did Credit Acceptance try to invoke arbitration as a defensive shield, and then it did not do so until two months before the circuit court resolved the case on summary judgment. Almost fifteen months passed from the time Credit Acceptance filed its deficiency action until the time it filed its motion to stay proceedings and arbitrate. During that time, Credit Acceptance made no attempt to arbitrate its claims surrounding the alleged deficiency. Credit Acceptance was not entitled to invoke its right to arbitrate in the final moments of the action. As we

noted in *Meyer*: "Conduct which allows an action to proceed to a point where the purpose of arbitration—to obtain a speedy, inexpensive and final resolution of disputes—is frustrated is conduct that estops a party from claiming a right to a stay of the proceedings and referral for contractual arbitration." *Id.* at 399; *see also J.J. Andrews*, 164 Wis. 2d at 223–24 ("The purpose of arbitration is to obtain a speedy, inexpensive and final resolution of disputes, and thereby avoid the expense and delay of a protracted court battle."). We agree.

¶ 48. As such, we conclude that the circuit court did not err when it denied Credit Acceptance's motion to arbitrate.

## IV. Damages.

¶ 49. Next, Credit Acceptance argues that the circuit court erred when it awarded Kirk $2300 in damages: $1300 in actual damages and $1000 in statutory damages. We agree with Credit Acceptance that the circuit court's award was in error and reverse on those grounds.

¶ 50. Damage awards for violations of WIS. STAT. § 427.104(1)(j) are governed by WIS. STAT. §§ 427.105 and 425.304. Whether the statutes entitle a party to both statutory and actual damages is a question of statutory interpretation that we review without deference to the circuit court. *See State v. Eichman*, 155 Wis. 2d 552, 560, 456 N.W.2d 143 (1990). When interpreting a statute, our primary objective is to ascertain and give effect to the intent of the legislature. *See Ball v. District No. 4, Area Bd. of Vocational, Technical and Adult Educ.*, 117 Wis. 2d 529, 537–38, 345 N.W.2d 389

(1984). To determine the legislature's intent, we first look to the language of the statute itself. *Id.* at 538.

¶ 51. WISCONSIN STAT. § 427.105(1) states that a "person injured by violation of this chapter may recover actual damages and the penalty provided in [WIS. STAT. §] 425.304[.]" Section 425.304 states as follows:

> A person who commits a violation to which this section applies is liable to the customer in an amount equal to the greater of:
>
> **(1)** Twice the amount of the finance charge in connection with the transaction, except that the liability under this subsection shall not be less than $100 nor greater than $1,000; *or*
>
> **(2)** The actual damages, including any incidental and consequential damages, sustained by the customer by reason of the violation.

(Italics added.)

¶ 52. The word "or" in WIS. STAT. § 425.304 makes it clear that Kirk is not entitled to both statutory and actual damages. The parties agree that his actual damages would amount to $1300, the amount Credit Acceptance received when it sold the car at auction. That is greater than the $1000 maximum he would be entitled to receive in statutory damages. As such, we reverse the circuit court's damages award and remand so that the judgment can be amended accordingly.

## V. Attorney's Fees and Costs.

¶ 53. Finally, Credit Acceptance argues that the circuit court erred in granting Kirk's motion for his attorney's fees and costs because: (1) the motion was

filed after the expiration of the statutory deadline; and (2) the circuit court granted the motion without holding a hearing or allowing Credit Acceptance an opportunity to respond. We conclude that the circuit court did not err in considering Kirk's motion but, based on the record before us, erred in setting an amount without a hearing.[8]

¶ 54. Credit Acceptance first argues that WIS. STAT. § 806.06(4) dictated that Kirk file his motion for attorney's fees and costs by August 23, 2010, that is, thirty days after the court entered its July 23, 2010 summary judgment order.[9] Section 806.06(4) states, in relevant part:

A judgment may be rendered and entered at the instance of any party either before or after perfection. If the party in whose favor the judgment is rendered causes it to be entered, the party shall perfect the judgment within 30 days of entry or forfeit the right to recover costs.

¶ 55. Credit Acceptance acknowledges that the circuit court granted Kirk's motion for an extension of time to file his motion for attorney's fees and costs, permitting Kirk until August 31, 2010, to file. However, Kirk missed that deadline and did not file his request for attorney's fees until September 3, 2010. Accompanying the attorney's fees motion was a letter from Kirk's attorney apologizing for the untimeliness of the

---

[8] We note that CCAP reflects that the circuit court held a hearing on attorney's fees and costs while this case was before us on appeal, but we do not have a transcript or order from that hearing. Thus, we review only the attorney's fees and costs order entered without a hearing.

[9] The circuit court's written summary judgment order also directed Kirk to file his motion for attorney's fees and costs by August 23, 2010.

motion and explaining the circumstances surrounding the oversight. Despite the tardiness of his motion, Kirk's attorney asked the circuit court "to make accommodations and consider this application."

■ ■

¶ 56. Consistent with its inherent and statutory powers to manage its docket, a circuit "court has broad discretion in deciding how to respond to untimely motions . . . because that broad discretion is essential to the court's ability to manage its calendar." *Teff v. Unity Health Plans Ins. Corp.*, 2003 WI App 115, ¶ 29, 265 Wis. 2d 703, 666 N.W.2d 38. We affirm the circuit court's discretionary decisions so long as it examined the relevant facts, applied a proper standard of law, and reached a reasonable conclusion. *Garfoot v. Fireman's Fund Ins. Co.*, 228 Wis. 2d 707, 717, 599 N.W.2d 411 (Ct. App. 1999).

¶ 57. By considering Kirk's motion for attorney's fees and costs, the circuit court implicitly granted Kirk's request that the court accept its late filing. Credit Acceptance, while arguing that Kirk's motion was late and therefore should not have been considered, does not argue that the circuit court erroneously exercised its discretion by accepting the late motion. Because Kirk's counsel apologized for his oversight, and because the motion was only two days late, we fail to see, without argument from counsel, how the circuit court erroneously exercised its discretion.

■

¶ 58. Next, Credit Acceptance argues that the circuit court erred in granting Kirk $9275.05 in attorney's fees without holding a hearing or permitting Credit Acceptance an opportunity to respond to Kirk's motion. We agree. However, we cannot tell from the record on appeal whether the circuit court held such a

hearing after the notice of appeal was filed. Although the parties did not tell us in their briefs, we can see from the CCAP entries that Credit Acceptance submitted in its appendix, and which Kirk relied on in other parts of his brief, that according to the circuit court docket entry dated November 12, 2010: "Defendant's motion to vacate order awarding attorney[']s fees heard. Arguments made. Court orders parties to submit to this court proposed orders by 11/19/2010 with any responses to first draft of orders due by 11/29/2010." Credit Acceptance supplemented the appellate record with the proposed order it submitted to the circuit court following the November 12, 2010 hearing, but did not supplement the record with a transcript of that hearing. As best we can tell, the circuit court held a hearing and did not sign the proposed order submitted by Credit Acceptance. Thus the docket does not indicate how or if the circuit court has resolved the issues presented to it at the hearing.

¶ 59. Therefore, we remand this case back to the circuit court for a hearing on Kirk's request for attorney's fees.

## CONCLUSION

¶ 60. In sum, the circuit court did not err when it partially denied Credit Acceptance's motion to dismiss, or later, when it granted Kirk's motion for summary judgment. Furthermore, we conclude that the circuit court did not err when it denied Credit Acceptance's belated motion for arbitration. However, we reverse the circuit court's order awarding Kirk both statutory and actual damages, on the grounds that WIS. STAT. § 425.304 only permits him to collect $1300 in actual damages. We remand so that the judgment may be

amended accordingly. We also remand for a hearing on Kirk's attorney's fees request.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded with directions.

¶ 61. FINE, J. (*dissenting*). I disagree with the Majority on two main points, and would reverse. Accordingly, I respectfully dissent.

*A. Arbitration.*

¶ 62. As the Majority recognizes, we interpret unambiguous contracts as they read. This is the arbitration clause agreed-to by the parties:

> The institution and maintenance of any action for judicial relief or exercise of self-help remedies shall not waive the right to submit *any* Dispute to arbitration, including any counterclaim asserted in any such action, and including those controversies or claims arising from the exercise of any such judicial relief or the exercise of self-help remedies.

(Emphasis added.) It is all-inclusive and covers "controversies or claims arising from the exercise of any such judicial relief or the exercise of self-help remedies."

¶ 63. As the Majority tells, us:

> After Tommy J. Kirk defaulted on his car loan, Credit Acceptance Corporation repossessed Kirk's car and filed an action for a deficiency judgment, which the circuit court later dismissed. Kirk then filed this lawsuit against Credit Acceptance, alleging that the manner in which Credit Acceptance repossessed the car and filed the deficiency action violated the Wisconsin Consumer Act.

Majority, ¶ 1. Thus, in the language of the arbitration agreement, Kirk's claims in this lawsuit "aris[e] from

664

[Credit Acceptance's] exercise of any such judicial relief [seeking the deficiency judgment] or the exercise of self-help remedies [by repossessing Kirk's car]." Accordingly, the arbitration clause governed, permitting but not requiring Credit Acceptance to seek arbitration. The fact that Credit Acceptance had originally sued Kirk, settled that lawsuit, and, pursuant to that settlement, dismissed the lawsuit, did not waive its right to rely on the arbitration clause here. Stated another way, Credit Acceptance would have had no reason to seek arbitration in the first action (where it sought the deficiency judgment) because it and Kirk settled that action.

¶ 64. Arbitration agreements within otherwise enforceable contracts are "valid, irrevocable and enforceable." WIS. STAT. § 788.01.

> A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part of the contract, or an agreement in writing between 2 or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable except upon such grounds as exist at law or in equity for the revocation of any contract.

*Ibid.* Further, any lawsuit that is "referable to arbitration under an agreement in writing for such arbitration" must be stayed until after the agreed-to arbitration. WIS. STAT. § 788.02.

> If any suit or proceeding be brought upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the

> parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*Ibid.* As we have seen, the issues encompassed by Kirk's lawsuit against Credit Acceptance for its alleged violations of the Wisconsin Consumer Act are, by the clear language of the arbitration clause, "referable to arbitration." Accordingly, the circuit court erred as a matter of law when it denied Credit Acceptance Corporation's motion to compel arbitration. Certainly, contrary to the Majority's implication otherwise in paragraph 47, Credit Acceptance had no reason to either pursue its deficiency-judgment action or seek arbitration in connection with that action once it and Kirk settled that lawsuit. Indeed, Credit Acceptance had no dispute with Kirk until Kirk brought this lawsuit.

### B. Self-help repossession.

¶ 65. As the Majority notes, Credit Acceptance's fifteen-day notices to cure complied with the Wisconsin Consumer Act. Thus, under the Act, Credit Acceptance was entitled to get the car back without first getting a replevin judgment. *See* WIS. STAT. § 425.205(1g); 425.206(1)(d). I do not understand the Majority to contend otherwise *except* that it concludes that a clause in the contract between Kirk and Credit Acceptance trumps §§ 425.205(1g); 425.206(1)(d). This is the clause:

> **Repossession of the Vehicle.** If You default and We have received an entry of judgment for the recovery of the Vehicle, We may take (repossess) the Vehicle from You after We give You any notice the law requires. To repossess the Vehicle, We can enter Your property, or

the property where the Vehicle is stored, so long as it is done peacefully and the law allows it.

Majority, ¶ 30. The clause's applicability is subject to two conditions. First, that Kirk "default." Second, that Credit Acceptance has "received an entry of judgment for the recovery of the Vehicle." The first pre-condition is satisfied: Kirk did default. The second pre-condition, however, is not satisfied: Credit Acceptance never got a "judgment for the recovery of the Vehicle" because it did not have to. Thus, the clause, which describes for the lay person what Credit Acceptance may do *if* it got a "judgment for the recovery" of the car, does not apply.[1]

¶ 66. Based on the foregoing, I would reverse and remand for further proceedings consistent with my analysis. Thus, I respectfully dissent.

---

[1] I disagree with the Majority's assertion that "[t]he contract plainly states that Credit Acceptance *can only repossess* the car '[i]f You default *and We have received an entry of judgment for the recovery of the Vehicle.*' " Majority, ¶ 31 (italics by the Majority, underlining added). It does no such thing.