COURT OF APPEALS
DECISION
DATED AND FILED

June 3, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP753**

STATE OF WISCONSIN

Cir. Ct. No. 2022GN181

IN COURT OF APPEALS
DISTRICT III

---

IN THE MATTER OF THE GRANDPARENTAL VISITATION OF A. Z. AND A. Z.:

D. J. W.,

PETITIONER-RESPONDENT,

V.

M. N. Z.,

RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Brown County: TIMOTHY A. HINKFUSS, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Dawn[1] filed a petition seeking grandparent visitation with her two minor grandchildren, Alice and Andrew. The children's mother, Megan, now appeals from the circuit court's order granting Dawn's petition. Megan argues that the court lacked personal jurisdiction over her and that it failed to apply the correct legal standard when ruling on Dawn's petition. We reject these arguments and affirm.

## BACKGROUND

¶2 Alice and Andrew—currently ages ten and eight, respectively—are the children of Megan and her late husband, Adam, who died in 2021. Dawn is Adam's mother and the children's paternal grandmother. In May 2022, Megan relocated with the children from Green Bay, Wisconsin, where Dawn resides, to Las Vegas, Nevada.

¶3 In November 2022, Dawn filed a petition for grandparent visitation with Alice and Andrew, pursuant to WIS. STAT. § 48.9795(12) (2023-24).[2] In the petition, Dawn alleged that she has had a "very close relationship" with Alice and Andrew throughout their lives, but when Megan moved to Las Vegas in May 2022, Megan refused to provide Dawn with her new address and then cut off all contact with Dawn. Dawn alleged that it would be in the children's best interests to allow their relationship with her to continue "by having regular guaranteed contact." Dawn therefore asked the circuit court to grant her "meaningful periods of placement" with the children.

---

[1] For ease of reading, we refer to the individuals involved in this confidential appeal using pseudonyms, rather than their initials.

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

¶4      On the same date that Dawn's petition was filed, a guardian ad litem (GAL) was appointed for Alice and Andrew.  In a report filed with the circuit court on January 11, 2023, the GAL recommended that the court grant Dawn "regular scheduled FaceTime" with the children, one week of visitation with the children in Green Bay each summer, and three days of visitation with the children in Las Vegas during their winter break from school.

¶5      On January 12, 2023, an attorney filed a notice of appearance in this case on Megan's behalf.  According to CCAP entries,[3] Megan appeared by phone at a hearing on January 19, 2023, and her attorney appeared by video.  During that hearing, both sides made statements regarding the GAL's report, and the hearing was then adjourned to March 16, 2023.

¶6      On March 14, 2023, Megan's attorney filed a letter with the circuit court explaining Megan's position regarding grandparent visitation.  The letter stated that Megan "believes that visitation with [Dawn] is in the best interests of the minor children, however, she is not comfortable with them traveling across the country and being away from home for an extended amount of time."  The letter further stated that Megan "does not oppose weekly 'FaceTime'" between Dawn and the children and "is open to periodic visits with [Dawn] in Las Vegas."  The letter asked the court to "enter a visitation order consistent with [Megan's] wishes."

---

[3] CCAP, which is an acronym for Wisconsin's Consolidated Court Automation Programs, is an online website that contains information entered by court staff.  *Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522.  We may take judicial notice of CCAP records.  *See id.*

¶7      Megan subsequently appeared by phone at the March 16, 2023 hearing, and her attorney was present in court. During the hearing, the parties agreed to participate in mediation. In May 2023, Megan moved with the children from Las Vegas to South Carolina. Megan subsequently appeared by phone at a status conference on June 8, 2023, and her attorney appeared by video. A contested hearing on Dawn's petition for grandparent visitation was later scheduled for November 22, 2023.

¶8      On October 20, 2023, prior to the contested hearing, Megan filed a motion to dismiss Dawn's petition for grandparent visitation for lack of personal jurisdiction. Megan asserted that the circuit court lacked personal jurisdiction over her because she was never personally served with Dawn's petition and no affidavit of personal service or substitute service had been filed with the court. The court orally denied Megan's motion to dismiss during a hearing on October 27, 2023.

¶9      The contested hearing on Dawn's petition for grandparent visitation took place on November 22, 2023, and January 18, 2024. During the hearing, the circuit court heard testimony from Dawn, Megan, and Dawn's adult grandson. Following the first day of the contested hearing, the court entered a temporary order granting Dawn weekly FaceTime contact with Alice and Andrew.

¶10     After the conclusion of the witnesses' testimony on the second day of the contested hearing, the GAL renewed his recommendation that Dawn be granted regular FaceTime contact with Alice and Andrew, one week of visitation in Green Bay during the summer, and three days of visitation in South Carolina during the children's winter break.

¶11     Dawn's attorney generally concurred with the GAL's recommendation but asked the circuit court to grant Dawn 10 to 14 days of

visitation with Alice and Andrew during the summer. Counsel acknowledged that when a court considers whether to grant a petition for grandparent visitation, "a fit parent gets a presumption that what they're doing is right for the children." Counsel argued, however, that the court should grant Dawn her requested visitation because Megan "has cut off a substantial relationship that is very important to these children" and because Dawn is "a net positive in these children's lives."

¶12 Megan's attorney asked the circuit court to follow the GAL's recommendation, "with the exception that the … summer visitation occur in South Carolina." Counsel argued that Megan is a fit parent and that due process "does not allow the state to intervene in the child rearing decision of a fit parent."

¶13 During its oral ruling, the circuit court noted that under WIS. STAT. § 48.9795(12), a court may grant a petition for grandparent visitation "if the court determines that visitation is in the best interests of the child." The court then agreed with Megan's testimony at the contested hearing that requiring weekly FaceTime contact between Dawn and the children was "too much." The court reasoned that requiring FaceTime contact "every other week" would be more appropriate, under the circumstances. The court agreed with Dawn's attorney that Dawn should be granted 14 days of visitation with the children each summer in Green Bay, where the family of their deceased father lives. The court also stated that it was inclined to grant Dawn two days of visitation with the children in South Carolina during their winter break from school, reasoning that the children should "be there for [Megan]" at Christmas and for Megan's birthday shortly after Christmas.

¶14    Ultimately, after further discussion with the parties regarding the logistics of transporting Alice and Andrew to Green Bay in the summer, the circuit court stated it would be in the children's best interests to order FaceTime contact with Dawn every other week, to grant Dawn visitation on December 29 and 30 every year in the location "where the children are living with [Megan]," and to grant Dawn two weeks of visitation each summer in Green Bay.  The court entered a written order memorializing its oral ruling, and this appeal follows.[4]

## DISCUSSION

### I.  Personal jurisdiction

¶15    As an initial matter, Megan renews her argument that the circuit court lacked personal jurisdiction over her because she was not properly served with Dawn's petition for grandparent visitation.  Megan argues that under WIS. STAT. § 48.9795(4)(c)2., Dawn was required to serve her with the petition by either personal delivery or certified mail.  Megan further argues that the petition was "never personally served" on her, "nor was any affidavit of mailing filed."

¶16    Assuming without deciding that WIS. STAT. § 48.9795(4)(c)2. applies to a petition for grandparent visitation under § 48.9795(12), we agree with the GAL that Megan waived her argument that the circuit court lacked personal

---

[4] We pause to note that the parties' appellate briefs, and the GAL's brief, do not comply with WIS. STAT. RULE 809.19(8)(bm), which requires a brief to "have page numbers centered in the bottom margin using Arabic numerals with sequential numbering starting at '1' on the cover." Our supreme court has explained that this pagination requirement "will match the page number to the page header applied by the eFiling system, avoiding the confusion of having two different page numbers." S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021). We admonish counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

jurisdiction over her. A court with subject matter jurisdiction may exercise personal jurisdiction "over any person who appears in the action and waives the defense of lack of jurisdiction over his or her person as provided in [WIS. STAT. §] 802.06(8)." WIS. STAT. § 801.06.[5] Section 802.06(8), in turn, provides that a defense of lack of personal jurisdiction is waived if it is "neither made by motion under this section nor included in a responsive pleading." Sec. 802.06(8)(a)2.

¶17 Thus, a person waives any objection to personal jurisdiction if he or she appears in an action without first raising an objection to personal jurisdiction in a motion under WIS. STAT. § 802.06 or in a responsive pleading. *See also Artis-Wergin v. Artis-Wergin*, 151 Wis. 2d 445, 452, 444 N.W.2d 750 (Ct. App. 1989) ("[A]n appearance of a defendant who does not object to the jurisdiction over his [or her] person is an appearance and equivalent to personal service."). "The term 'appearance' is generally used to signify an overt act by which one against whom a suit has been commenced submits himself [or herself] to the court's jurisdiction." *Id.*

¶18 Megan indisputably appeared in the underlying circuit court case before filing her motion to dismiss for lack of personal jurisdiction. As summarized above, Megan's attorney filed a notice of appearance on January 12, 2023. Thereafter, on March 14, 2023, Megan's attorney filed a letter with the court explaining Megan's position regarding grandparent visitation and asking the court to "enter a visitation order consistent with [Megan's] wishes." In addition, Megan and her attorney appeared at and participated in hearings on January 19,

---

[5] WISCONSIN STAT. chs. 801-847 apply to proceedings under WIS. STAT. ch. 48, "except where a different procedure is prescribed by statute or rule." *David S. v. Laura S.*, 179 Wis. 2d 114, 143 n.26, 507 N.W.2d 94 (1993); *see also* WIS. STAT. § 801.01(2).

2023, March 16, 2023, and June 8, 2023. All of these actions occurred before Megan filed her motion to dismiss for lack of personal jurisdiction on October 20, 2023.

¶19 We agree with the GAL that, under these circumstances, Megan waived any objection to the circuit court's personal jurisdiction over her. In addition, we note that by failing to file a reply brief, Megan has conceded the GAL's argument in this regard. *See* ***Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) ("Respondents on appeal cannot complain if propositions of appellants are taken as confessed which they do not undertake to refute." (citation omitted)).[6]

## II. Application of an incorrect legal standard

¶20 Megan also argues that the circuit court applied an incorrect legal standard when ruling on Dawn's petition for grandparent visitation. "Whether to grant or deny grandparent visitation is within the circuit court's discretion." ***Rogers v. Rogers***, 2007 WI App 50, ¶7, 300 Wis. 2d 532, 731 N.W.2d 347. "We

---

[6] We further note that the appellate record does not contain a transcript of the October 27, 2023 hearing at which the circuit court denied Megan's motion to dismiss for lack of personal jurisdiction. It is the appellant's burden to ensure that the record is sufficient for us to review the issues raised on appeal, *see* ***State Bank of Hartland v. Arndt***, 129 Wis. 2d 411, 423, 385 N.W.2d 219 (Ct. App. 1986), and we must assume that any missing materials support the circuit court's ruling, *see* ***Fiumefreddo v. McLean***, 174 Wis. 2d 10, 27, 496 N.W.2d 226 (Ct. App. 1993).

We also note that, on appeal, Megan appears to argue that the circuit court lacked "competency" due to Dawn's failure to comply with WIS. STAT. § 48.9795(4)(c)2. "Competency" pertains to a court's ability to exercise its subject matter jurisdiction over a particular case, not its personal jurisdiction over a party. *See* ***Village of Trempealeau v. Mikrut***, 2004 WI 79, ¶9, 273 Wis. 2d 76, 681 N.W.2d 190. Furthermore, there is no indication in the appellate record that Megan raised any argument regarding competency in the circuit court. "Arguments raised for the first time on appeal are generally deemed forfeited." ***Tatera v. FMC Corp.***, 2010 WI 90, ¶19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810.

will affirm if the circuit court examined the relevant facts, applied the proper legal standard and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Id.* Whether the court applied an incorrect legal standard is a question of law that we review de novo. *Id.*

¶21 WISCONSIN STAT. § 48.9795(12) provides that, "[i]f one or both parents of a child are deceased and the child is in the custody of the surviving parent or any other person," a circuit court may grant "reasonable visitation privileges" to the child's grandparent "if the surviving parent or other person who has custody of the child has notice of the hearing and if the court determines that visitation is in the best interests of the child." However, when considering a petition for grandparent visitation, a court must apply a presumption "that a fit parent's visitation decision is in the best interest of his or her child." *Michels v. Lyons*, 2019 WI 57, ¶23, 387 Wis. 2d 1, 927 N.W.2d 486; *see also Rick v. Opichka*, 2010 WI App 23, ¶4, 323 Wis. 2d 510, 780 N.W.2d 159.

> [A] circuit court should consider the nature and extent of grandparent visitation only if a grandparent overcomes the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest. A circuit court should not substitute its judgment for the judgment of a fit parent even if it disagrees with the parent's decision.

*Michels*, 387 Wis. 2d 1, ¶37.

¶22 Megan argues that the circuit court failed to apply the presumption that her visitation decision was in the children's best interests and instead "applied its own assessment of what was in the best interests of the children." She asserts that the court "made no findings or comment regarding" her "very clearly stated position" that Dawn's visitation with the children should take place "where [the

children] currently lived." She further asserts that there was "no evidence" presented at the contested hearing that "conducting the visitation where the children lived would be harmful or impair their relationship with [Dawn] to their detriment."[7]

¶23    Megan is correct that, during its oral ruling, the circuit court did not expressly reference the presumption that Megan's visitation decision was in the children's best interests. It is clear from the record, however, that the court was aware of that presumption when making its decision. Dawn's attorney expressly argued on the second day of the contested hearing, shortly before the court made its oral ruling, that "a fit parent gets a presumption that what they're doing is right for the children." Megan's attorney similarly argued, just before the court made its ruling, that due process "does not allow the state to intervene in the child rearing decision of a fit parent" and that a fit parent's visitation decision "should be given special weight under law."

¶24    Furthermore, the evidence presented at the contested hearing was sufficient to support the circuit court's implicit determination that Dawn had overcome the presumption that Megan's preference for visitation in South Carolina, rather than Green Bay, was in the children's best interests. *See Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737 ("Although the proper exercise of discretion contemplates that the circuit court explain its reasoning, when the court does not do so, we may search the record to

---

[7] We note that Megan does not develop any argument on appeal that the circuit court erred by awarding Dawn visitation with the children, nor does she challenge the amount of visitation that the court awarded. Megan's appellate arguments pertain solely to the court's decision that the children's summer visitation with Dawn would take place in Green Bay, rather than South Carolina.

determine if it supports the court's discretionary decision."); *see also **Teff v. Unity Health Plans Ins. Corp.***, 2003 WI App 115, ¶14, 265 Wis. 2d 703, 666 N.W.2d 38 (refusing to reverse a discretionary decision where "there [was] an implicit finding under the correct standard and … the facts provide[d] a reasonable basis for the court's implicit determination").

¶25    During her testimony at the contested hearing, the only reasons that Megan provided in support of her decision that Dawn's visitation should occur in South Carolina, rather than Green Bay, were that Megan would not feel "comfortable" with the children being so far away from her and that she would like to be closer to the children in case of an emergency. These reasons, however, pertain to *Megan's* best interests—that is, what would make Megan most comfortable. Megan did not provide any reasons why it would be in the *children's* best interests for Dawn's visitation to occur in South Carolina.

¶26    Moreover, Megan acknowledged that Dawn and the children love each other, that the children have a relationship with Dawn, and that Megan does not want to "take that away from them." During her testimony, Dawn explained that it would be impractical—if not impossible—for her to exercise visitation with the children in South Carolina for extended periods of time. Dawn testified that she and her husband are the primary caregivers for her daughter, who is "severely handicapped" and requires significant care. Dawn further explained that her daughter is unable to travel long distances and that, due to the nature of her daughter's condition, "it's very difficult to find somebody that can just walk in and" provide the necessary care for her. Dawn testified that the longest amount of time that she would be willing to travel away from her daughter would be three days.

¶27    Dawn also testified that having visitation in Green Bay would be beneficial to the children because, aside from Dawn, the children have other family members in Green Bay on their father's side, including an aunt, an uncle, and five cousins.  Dawn explained that visitation in Green Bay would be the children's "only opportunity" to see those family members.

¶28    In addition, in his written report to the circuit court, the GAL opined that the children have a substantial relationship with Dawn and that Megan "has unfairly refused to encourage that relationship."[8]  The GAL noted that "[i]t almost seems like [Megan] thinks it is best to eliminate anything or anyone related to [Adam] from the children's lives," which the GAL did not believe was in the children's best interests.

¶29    The circuit court could reasonably conclude that this evidence was sufficient to overcome the presumption in favor of Megan's visitation decision and that, contrary to Megan's decision, granting Dawn visitation with the children in Green Bay would be in the children's best interests.  The court did not erroneously exercise its discretion in that regard.

    *By the Court.*—Order affirmed.

    This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

    [8] Dawn testified at the contested hearing that Megan moved to Las Vegas without telling her and without providing her new address; that Dawn was forced to hire a private investigator to find Megan and the children; and that Megan has made it difficult for Dawn to contact the children via FaceTime.