# COURT OF APPEALS
# DECISION
# DATED AND FILED

## September 1, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2019AP205**

**STATE OF WISCONSIN**

Cir. Ct. No.  2014CF3400

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

  V.

DWAYNE T. FREEMAN,

  DEFENDANT-APPELLANT.

APPEAL from orders of the circuit court for Milwaukee County: DENNIS R. CIMPL, Judge. *Affirmed in part; reversed in part and cause remanded with directions*.

Before Blanchard, Dugan, and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Dwayne T. Freeman, *pro se*, appeals the orders denying his postconviction motion and his motion for reconsideration.[1]

¶2     Following a jury trial Freeman was convicted of armed robbery, as a party to a crime, as a repeater; burglary, as a party to a crime, while possessing a dangerous weapon; and possession of a firearm by a felon.[2]

¶3     On appeal Freeman argues that:   (1) the trial court lacked competency to proceed with the case because the amended information was untimely; (2) newly discovered evidence filed with his postconviction motion requires a new trial; (3) the trial court erred because it did not conduct an evidentiary hearing on his ineffective assistance of trial counsel claim; and (4) both trial and appellate counsel provided him with ineffective legal assistance.

¶4     We conclude that Freeman alleged sufficient facts to warrant a *Machner*[3] hearing on that part of his ineffective assistance of trial counsel claim based on his allegation that trial counsel failed to call a potential witness, Arzell Chisholm.   For that reason, we reverse and remand this matter for a *Machner*

---

[1] We construe *pro se* briefs "to make the most intelligible argument we can discern." *See **State ex rel. Wren v. Richardson***, 2019 WI 110, ¶25, 389 Wis. 2d 516, 936 N.W.2d 587.

[2] The Honorable Timothy M. Witkowiak presided over the trial of this matter and denied Freeman's first postconviction motion filed in January 2016.   The Honorable Dennis R. Cimpl presided over the postconviction proceedings that are the subject of this appeal.   We refer to Judge Witkowiak as the trial court and Judge Cimpl as the postconviction court.

Previously, Freeman filed a direct appeal from the judgment of conviction and the trial court's order denying his first postconviction motion.   We affirmed.   *See **State v. Freeman***, No. 2016AP232-CR, unpublished slip op., ¶¶2-13 (WI App Feb. 28, 2017).

[3] ***State v. Machner***, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

hearing on that part of Freeman's ineffective assistance of trial counsel and appellate counsel claims. In all other respects, we affirm the postconviction court's orders.

## BACKGROUND

¶5 The State filed a complaint alleging that on July 30, 2014, B.J. picked up his wife, A.W., from work and they went to their home in the 3600 block of North 26th Street.[4] Freeman and two other men immediately approached them with guns. Freeman grabbed A.W. from behind, told her that there was a bullet in his gun, and walked her to the front door. The other two men held B.J. and walked him to the door. The three men then entered the home with the couple. Two of the men demanded money. A.W. led Freeman to the basement and gave him $8000 in cash that was hidden in the ceiling. Freeman and A.W. came up from the basement and Freeman took approximately five or six grams of marijuana belonging to A.W., some belts, and car keys.

¶6 When one of the men noticed that the police had arrived, the three men ran out the back door of the home. While B.J. was fighting with two of the men in the backyard, A.W. retrieved a loaded firearm from a pantry shelf, ran to the backyard, and fired the gun into the air. The men scattered.

¶7 City of Milwaukee Police Officers Ashley Navone and Joseph Saric responded to a call that someone had a gun. Navone saw three men run from the house and then she heard gunfire. When the gunfire ended, Navone saw Freeman

---

[4] Many of these background facts are taken from this court's decision on Freeman's direct appeal. *Freeman*, No. 2016AP232-CR, ¶¶2-13.

3

climb a fence between yards. When Navone ordered Freeman to come out, he hid. Officer Erik Smith responded to Navone's call that a man was hiding in the yard, and he saw Freeman run. After running a few blocks, Freeman turned, faced Smith, and raised his hands. Smith handcuffed Freeman.

¶8    On August 3, 2014, the State charged Freeman with armed robbery, as a party to a crime, as a repeater. The court held a preliminary hearing on the charge on August 22, 2014, after which Freeman was bound over for trial. At the conclusion of the hearing, the State filed an information, which included the armed robbery charge, and Freeman was immediately arraigned on the information. On October 16, 2014, the State filed an amended information charging Freeman with an additional count of burglary as a party to a crime. Freeman was arraigned on that information on November 24, 2014.[5]

¶9    On January 16, 2016, Freeman filed a witness list that included Steve Harrington[6] and Jamie Gray. The State moved to strike those witnesses, on the grounds that they were alibi witnesses and that Freeman had not provided timely notice.

¶10    On the first day of the trial, the trial court addressed the State's motion to strike. Trial counsel explained to the trial court that he planned to call Harrington, whose testimony would not place Freeman anywhere geographically. He argued that Harrington was not an alibi witness; rather, trial counsel argued

---

[5] On January 16, 2015, the State filed an amended information, charging Freeman with an additional count of possession of a firearm by a felon.

[6] Freeman also refers to the witness as Harrington-Glover. We, however, consistently refer to him as Harrington.

that Harrington's testimony would corroborate Freeman's explanation of what he was doing at the time of the crime—walking his dog. The State objected, arguing that Harrington's testimony was not relevant because he would not testify that he had knowledge about where Freeman was at the time of the robbery.[7] The trial court excluded Harrington as a witness due to lack of proper notice for the alibi witness and on the grounds of relevance.

¶11 At trial, the jury heard the testimony of A.W. and the officers who investigated the crime. Freeman called Detective Marco Salaam as a witness. Salaam testified that there were illegal drugs at the victims' residence and that officers knew that roughly three grams of marijuana were taken. Freeman waived his right to testify and did not call any other witnesses. The jury returned guilty verdicts on the three charges against Freeman.

¶12 Thereafter, Freeman, by counsel, filed a postconviction motion seeking a new trial wherein he argued that the trial court erroneously excluded Harrington and Gray as witnesses and, alternatively, seeking a ***Machner*** hearing on his claim of ineffective assistance of trial counsel. The postconviction court denied the motion without a hearing.

¶13 On appeal, this court affirmed the judgment of conviction and the postconviction court's denial of Freeman's motion for postconviction relief. *See State v. Freeman*, No. 2016AP232-CR, unpublished slip op., ¶1 (WI App Feb. 28, 2017). The supreme court denied Freeman's petition for review.

---

[7] In ***Freeman***, No. 2016AP232-CR, ¶10 n.5, this court noted that Gray was not mentioned during the discussion of the motion to strike, that the State indicated that Freeman intended to only call Harrington as a witness, and that trial counsel did not comment to the contrary.

¶14    On December 27, 2018, Freeman, *pro se*, filed a second motion for postconviction relief, which included the affidavit of Nigel Jackson-Riley, and asserted that the averments in the affidavit were newly discovered evidence warranting a new trial.  Freeman also argued that:  (1) the trial court lacked competency over the amended information; (2) trial counsel was ineffective because he did not timely file Freeman's witness list and did not investigate and call Arzell Chisholm and Joseph Jenkins as witnesses;[8] and (3) appellate counsel was ineffective for not claiming that his trial counsel was ineffective for not timely filing his witness list.  In a written decision and order, the postconviction court denied Freeman's second postconviction motion, without a hearing.

¶15    Freeman moved for reconsideration and filed affidavits from Harrington and Gray that he claimed corroborate Jackson-Riley's affidavit. Additionally, Freeman argued that appellate counsel was ineffective in not arguing that trial counsel was ineffective for not investigating and calling Jackson-Riley, Chisolm, and Jenkins as witnesses.  The postconviction court denied the motion for reconsideration in a written decision.  This appeal follows.

### I.    Trial court did not lack competency

¶16    Freeman argues that the trial court lacked competency to proceed with the amended information that was filed on October 22, 2014,[9] because the State did not file the amended information within thirty days of the preliminary

---

[8] Freeman's ineffective assistance of trial counsel claim included additional alleged deficiencies.  However, Freeman does not raise them on appeal and, therefore, is deemed to have abandoned them.  *See* **State v. Ledger**, 175 Wis. 2d 116, 135, 499 N.W.2d 198 (Ct. App. 1993).

[9] Freeman incorrectly states that the amended information was filed on November 24, 2014.  The record reflects that it was filed on October 16, 2014.

hearing which was held on August 22, 2014. He asserts that the State did not file its amended information within thirty days of his preliminary examination, nor did it submit a motion requesting the trial court to extend the period for filing the amended information.

¶17 In its written decision, the postconviction court stated,

> [T]he record reveals that the State filed an information in this case on the same date as the preliminary hearing (August 22, 2014). In addition, contrary to [Freeman's] contention that no arraignment was held, an arraignment was held on the amended information on November 24, 2014, at which time he entered not guilty pleas. His claim that the amended information was not timely filed is predicated on his belief that the State had never filed an information, which is incorrect.

In other words, the problem with Freeman's argument is that it lacks support in the record. As noted by the postconviction court, the record shows that the original information was filed on August 22, 2014, the day the preliminary hearing was held and that Freeman was arraigned on the information that day. Further, the record shows that at the hearing on November 24, 2014, Freeman was arraigned on the amended information.[10] At that hearing, Freeman's trial counsel told the trial court that he had received the amended information and read through it with Freeman, and that Freeman was pleading not guilty to the counts.

¶18 We conclude that Freeman's argument that the trial court lacked competency to proceed with his case is without merit.

---

[10] The matter was set as a status of counsel date because the trial court granted Freeman's initial counsel's motion to withdraw because a conflict arose between Freeman and counsel.

## II.     Freeman's alleged newly discovered evidence does not entitle him to a new trial

¶19     Freeman argues that the postconviction court erred because it did not order a new trial based on the averments in Jackson-Riley's affidavit.  He argues that the averments are material to whether he was involved in the July 30, 2014 crimes and that he did not know of the affidavit's existence until shortly after July 18, 2018, when he received it.

### Standard of review and applicable law

¶20     The decision to grant a motion for a new trial based on newly discovered evidence is committed to the trial court's discretion.  ***State v. Avery***, 2013 WI 13, ¶22, 345 Wis. 2d 407, 826 N.W.2d 60.  We review the trial court's determination for an erroneous exercise of discretion.  *See **id.***  A trial court erroneously exercises its discretion when it applies an incorrect legal standard to newly discovered evidence.  *See **State v. McCallum***, 208 Wis. 2d 463, 474, 561 N.W.2d 707 (1997).  Furthermore, we do not set aside the trial court's finding of fact unless clearly erroneous.  *See* WIS. STAT. § 805.17(2) (2017-18)[11] (made applicable to criminal proceedings by WIS. STAT. § 972.11(1)).

¶21     To be entitled to a new trial based on newly discovered evidence "a defendant must prove:  '(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.'"  ***State v. Plude***, 2008 WI 58, ¶32, 310 Wis. 2d 28, 750 N.W.2d 42 (citation omitted).  "If

---

[11] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

the defendant is able to prove all four of these criteria, then it must be determined whether a reasonable probability exists that had the jury heard the newly[]discovered evidence, it would have had a reasonable doubt as to the defendant's guilt." *Id.*

¶22 "A reasonable probability of a different result exists if there is a reasonable probability that a jury, looking at both the old and the new evidence, would have a reasonable doubt as to the defendant's guilt." *Avery*, 345 Wis. 2d 407, ¶25. "A court reviewing the newly discovered evidence should consider whether a jury would find that the evidence 'had a sufficient impact on other evidence presented at trial that a jury would have a reasonable doubt as to the defendant's guilt.'" *Id.* (citation omitted). "This latter determination is a question of law." *See Plude*, 310 Wis. 2d 28, ¶33.

### Jackson-Riley's affidavit does not entitle Freeman to a new trial

¶23 In his affidavit, Jackson-Riley avers that "during the morning hours of July 30, 2014 [the date of the robbery], I was riding my bike home when I rode past a neighborhood dude I knew by the name of 'Wayne' (Dwayne Freeman). [Freeman] was walking his dog at that time; … when I got to 26th and Nash, I witnessed a robbery taking place." Jackson-Riley further avers that "I witnessed a black male and female by three guys dressed in all black; … the guys in all black had guns pointed at the heads of the black male and female; … after seeing guns, I rode off on my bike." He then avers that "I recently learned that [Freeman] had been arrested and convicted for the robbery on 26th and Nash, however, I know for a fact that he could not have participated in the robbery because minutes before observing the man and woman being robbed, I observed [Freeman] walking his dog in the opposite direction."

¶24 Addressing Jackson-Riley's affidavit, the postconviction court noted that it had an "unreadable" signature, and "is vague, non-specific, and untrustworthy on its face." The postconviction court also noted that the affidavit does not explain when Jackson-Riley allegedly saw Freeman walking his dog or whether the robbery he supposedly saw was the one in this case.[12] Thus, the postconviction court found that Jackson-Riley's statement that it was the robbery in this case that he witnessed and that Freeman could not be involved because he was walking his dog in the opposite direction was conclusory.

¶25 We conclude that Jackson-Riley's affidavit provides no allegations that could show that Freeman could not have committed or did not commit the crimes. Jackson-Riley avers that he saw Freeman walking his dog in the opposite direction from 26th and Nash (3627 North 26th Street) minutes before the robbery. However, Freeman was apprehended by Officer Smith at 3710 North 25th Street. Moreover, Smith saw Freeman run out of a yard at 2602 Nash Street and run down 26th Street. Smith and his partner chased Freeman down 26th Street, saw Freeman run through a couple of yards and come out on 25th Street. Freeman stopped on 25th Street and put his hands up. Smith chased Freeman when Freeman was a few houses away from the home that was robbed and Smith apprehended Freeman just over a city block from the robbed home.

¶26 As the postconviction court noted, Jackson-Riley's affidavit is vague and non-specific. It is unclear from Jackson-Riley's affidavit where Jackson-Riley

---

[12] The postconviction court further stated that the Jackson-Riley affidavit does not state "what his relationship is to Freeman, where he lives now, where he lived then, or why he didn't report what he saw to police." However, these details are more relevant to the credibility of the witness, rather than whether the affidavit meets the criteria for a new trial.

was when he saw Freeman, what direction Jackson-Riley was headed, what direction Freeman was headed when he was walking his dog "in the opposite direction," and how many minutes elapsed from when Jackson-Riley saw Freeman until when Jackson-Riley saw the robbery. These are critical details because at a new trial, the jury would learn that, almost immediately after the police were called at 7:20 a.m., Freeman was very close to the home that had been robbed. For these reasons, Jackson-Riley's affidavit does not provide an alibi for Freeman.

¶27   After the postconviction court denied Freeman's second motion, he filed a motion for reconsideration, which included affidavits from Harrington and Gray, and asserted that those affidavits corroborate the facts in Jackson-Riley's affidavit. Freeman asserted that "ultimately, the evidence strikes at the heart of the State's case, as it demonstrates Freeman could not have been at two places at the same time."

¶28   Harrington avers that he knows Freeman and has known Freeman to walk his dog in the early morning hours, and that he saw Freeman walking his dog in the early morning hours of July 30, 2014, at 2833 North 24th Street. Harrington goes on to aver that, after he learned that Freeman had been arrested, he contacted trial counsel and told him that he would testify to his "knowledge that in the early morning hours of or about 6:30 a.m. … [Harrington] always does this walk with his dog around that time[.] [T]his attorney told me that he [would] contact me

later to come to court. [H]e told me this on Oct 16 but never contacted me any further." Harrington states that he believes trial counsel's name is Doug.[13]

¶29 In his affidavit Gray states,

> I witness[ed] Dwayne Freeman (whom I have known for 10 years) walk his dog on the morning of July 30, 2014. I witness[ed] [Freeman] leave the residence at 2833 North 24th Street … with his dog in the early morning hours, about 6:30 a.m. I contacted [Freeman]'s attorney, named Douglas, by way of phone number …, I explained to the attorney that I could help in [Freeman]'s cases[.] I had explained to him that [Freeman] always leaves the residence at this time with that dog[.] [T]his attorney said that he would call me to testify about [Freeman]'s case.

¶30 The postconviction court denied the motion for reconsideration, concluding that the Harrington and Gray affidavits were not newly discovered evidence and that, in fact, postconviction/appellate counsel had filed a postconviction motion arguing that trial counsel was ineffective for failing to file a notice of alibi regarding Harrington and Gray.[14]

¶31 When this court affirmed the order denying Freeman's first motion for postconviction relief, we concluded "it does not appear [that Harrington and Gray] would have provided relevant testimony."[15] Moreover, the information in

---

[13] CCAP records reflect that Freeman's trial counsel was Douglas Rebholz. CCAP stands for the Consolidated Court Automation Programs (CCAP) Case Management system, and it provides public access to the records of the Wisconsin circuit courts. *See* Wis. Stat. § 902.01; *see also* **Kirk v. Credit Acceptance Corp.**, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522 (taking judicial notice of CCAP records).

[14] The postconviction court considered the contents of the Harrington and Gray affidavits although it rejected Freeman's argument that the failure to file them with his "original" motion for postconviction relief was due to his alleged mild mental retardation.

[15] **State v. Freeman**, No. 2016AP232-CR, unpublished slip op., ¶22 (WI App Feb. 28, 2017). At the time this court rendered its decision, Freeman had not yet filed the affidavits from Harrington and Gray.

the affidavits, even if true, does not show that Freeman was not one of the armed robbers. The Harrington and Gray affidavits would only support the argument that Freeman left his home at 2833 North 24th Street at approximately 6:30 a.m. on July 30, 2014, with his dog. Police were dispatched to the reported armed robbery at approximately 7:20 a.m.

¶32 This court went on to state that "[a]s explained by Freeman's trial counsel, Harrington would not place Freeman 'anywhere geographically.'" *Freeman*, No. 2016AP232-CR, ¶17. It then quoted Freeman's trial counsel's statement to the trial court:

> He simply … knows [Freeman] left the building. He doesn't know if he went to a coffee shop or went on a trip, he just knows he left on a routine task to walk the dog, that he's familiar with, he regularly does, but he doesn't know if he went north, south, east, or west, does not place him at any specific location.

*Id.* This court then adopted the postconviction court's "summation of the shortcomings in this regard." *Id.*, ¶18. The postconviction court stated:

> What is the relevance of th[is] witness[]? The defendant was walking his dog at some time at some place unknown with blue latex gloves. Well, he was also arrested by police on 26th and Nash that morning who had seen him running from the back of [A.W.'s] house, and he was identified by the occupants of the home as one of the armed robbers who stole money and drugs from their home.

*Id.* Thus the averments in Harrington and Gray's affidavits do not even suggest that Freeman could not have committed or did not commit the crimes.

¶33 Based on our discussion above, we conclude that the allegations in the Jackson-Riley, Harrington, and Gray affidavits would not make it reasonably probable that a different result would be reached in a new trial. Thus, we conclude

that Freeman has not met his burden of showing that he is entitled to a new trial on the basis of newly discovered evidence.

### III.    Ineffective assistance of trial counsel

¶34    Freeman argues that the postconviction court erred when it denied, his claim that trial counsel provided ineffective assistance without a hearing.  He alleged that trial counsel was ineffective because he:  (1) did not timely file a witness list, including Harrington and Gray; (2) did not call potential witnesses, Chisholm and Jenkins; (3) did not challenge the information, which charged burglary and possession of a firearm as a felon as multiplicitous or duplicitous; and (4) did not challenge the jurisdiction of the court on the ground that the amended information was not filed within thirty days after the preliminary examination.[16]

### Applicable law and standard of review

¶35    A defendant is not automatically entitled to an evidentiary hearing on a postconviction motion.  "A hearing on a postconviction motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief."  *See State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433.  "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief[,]" a trial court may deny a

---

[16] We rely on our discussion of Freeman's argument that the trial court lacked competency over his case and hold that trial counsel was not ineffective for failing to raise that issue.  Trial counsel's failure to pursue a meritless issue does not constitute deficient performance. *See State v. Cummings*, 199 Wis. 2d 722, 748 n.10, 546 N.W.2d 406 (1996).  We do not further discuss this component of Freeman's ineffective assistance of trial counsel claim.

postconviction motion without a hearing. *See id.*, ¶9. Whether a motion alleges sufficient facts that, if true, would entitle the defendant to an evidentiary hearing presents a question of law that we review *de novo*. *See State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996). "[A] defendant should provide facts that allow the reviewing court to meaningfully assess his or her claim." *Id.* at 314. As stated in *Allen*:

> postconviction motions [should]… allege the five "w's" and one "h"; that is, who, what, where, when, why, and how. A motion that alleges, within the four corners of the document itself, the kind of material factual objectivity ... will necessarily include sufficient material facts for reviewing courts to meaningfully assess a defendant's claim.

*Id.*, 274 Wis. 2d 568, ¶23 (footnote omitted).

¶36    Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel. *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334. A defendant must show two elements to establish that his or her counsel's assistance was constitutionally ineffective:  (1) counsel's performance was deficient; and (2) the deficient performance resulted in prejudice to the defense. *Id.* As to the second prong of the ineffective assistance of counsel test, prejudice occurs when the attorney's error is of such magnitude that there is a "reasonable probability" that but for the error the outcome would have been different. *State v. Erickson*, 227 Wis. 2d 758, 769, 596 N.W.2d 749 (1999). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' That requires a 'substantial,' not just 'conceivable,' likelihood of a different result.'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citations omitted).

15

**Filing of the witness list**

¶37    Freeman's argument that trial counsel was ineffective for not timely filing a witness list is procedurally barred because it was raised in his first postconviction motion and his first appeal.  *See Freeman*, No. 2016AP232-CR, ¶22 (concluding that trial counsel was not ineffective).  "A matter once litigated may not be relitigated in a subsequent postconviction proceeding no matter how artfully the defendant may rephrase the issue."  *See State v. Witkowski*, 163 Wis. 2d 985, 990, 473 N.W.2d 512 (Ct. App. 1991).  Therefore, we conclude that Freeman's allegation that trial counsel was ineffective for failing to file a witness list is meritless.

**Chisholm and Jenkins as witnesses**

¶38    Freeman also argues that trial counsel was ineffective for not investigating and calling Chisholm and Jenkins as witnesses.  In his underlying postconviction motion, Freeman asserted that on October 31, 2014, Chisholm went to the home of Freeman's stepmother, Christina Glover, and told her that he was an eyewitness who could testify to facts demonstrating that Freeman had nothing to do with the July 30, 2014 armed robbery and that, against his penal interest, Chisholm was willing to testify about what he knew.

¶39    Freeman stated that Chisholm told Glover that a person, known to him as Joseph Jenkins or Phat, asked Chisholm to take part in the July 30, 2014 robbery with Jenkins and two others.  Initially, Chisholm refused to participate, but later Chisholm changed his mind and attempted to catch up with Jenkins and the other two men.  Chisholm further allegedly told Glover that as he was trying to catch up with Jenkins and the two other men, he "passed by or observed" Freeman walking his dog.  He also told Glover that Freeman had nothing to do with the

armed robbery, but was simply in the wrong place at the wrong time. When Chisholm approached the area of 3627 North 26th Street, where the robbery was supposed to take place, Chisholm heard two gunshots. He also observed Jenkins fleeing from the direction where the shots were being fired. Chisholm also ran from the area.

¶40 Freeman further asserted that Chisholm told Glover that as he was running, he again saw Freeman and saw that Freeman's dog was running away from Freeman." Chisholm stated that he heard more gunshots and he ran away from the area and that he noticed that, once the gunshots started, Freeman "was running in a parallel but opposite direction" than Freeman's dog.

¶41 In Freeman's motion for reconsideration, Freeman stated, "also, Freeman asserts that in his motion for postconviction relief at page 6, lines 4-9, he further informed the court at bar that his stepmother, Glover, had informed or made his trial counsel aware of these two eyewitnesses—Chisholm and Jenkins." He then went on to argue that if the statements of the two potential exculpatory witnesses, Chisholm and Jenkins, were found to be true, they could have "definitely" brought about a different result.

¶42 The issue on appeal is whether Freeman's allegations of what Chisholm told Glover were sufficient to obtain a *Machner* hearing. As far as Glover is concerned, she would not be able to testify about anything Chisholm allegedly told her because it appears to be clearly hearsay and Freeman does not argue to the contrary. *See* WIS. STAT. § 908.01(3) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted."); WIS. STAT. § 908.02 ("Hearsay is not admissible except as provided by these rules.").

17

¶43 For example, Glover could not testify to what Chisholm allegedly told her because Chisholm's alleged statement was not against his penal interest. *See* WIS. STAT. § 908.045(4) (defining a statement against penal interest as a "statement which was at the time of its making so far contrary to the declarant's pecuniary of proprietary interest … to subject the declarant to civil or criminal liability … that a reasonable person in the declarant's position would not have made the statement, unless the person believed it to be true."). Chisholm allegedly said that Jenkins attempted to recruit him to participate in the robbery, but that he refused to do so. His statement that he then attempted to catch up to the three robbers, but the robbery occurred before he could participate, also reflects that Chisholm did not face any potential criminal liability.

¶44 The next issue is whether Chisholm could testify about what Freeman alleges Jenkins told Chisholm. Jenkins' alleged statements to Chisholm asking Chisholm to participate in the robbery with him are hearsay. However, because it implicates Jenkins in an agreement to commit robbery, it would be a statement against Jenkins' penal interest. *See* WIS. STAT. § 908.045(4). However, there are two additional requirements that Chisholm's testimony about Jenkins' statement must satisfy before they would be admissible. First, Freeman would have to establish that Jenkins is unavailable as a witness. *See* WIS. STAT. § 908.04 (listing situations in which the declarant is unavailable.). Second, when a statement tends to expose the declarant to criminal liability and is offered to exculpate the accused, it is "not admissible unless corroborated." *See* § 908.045(4). Because Freeman has failed to establish these two other requirements, Chisholm could not testify about Jenkins' statements.

¶45 By contrast, Chisholm's testimony as to what he allegedly actually saw at the scene is not hearsay and would be admissible since it is relevant to the

charges against Freeman. We note that Chisholm's alleged testimony would place Freeman at the very location of the crime. If true, Chisholm's testimony about what he saw at or near the scene of the robbery could entitle Freeman to relief.[17]

¶46 Examining the issue of whether trial counsel was ineffective for failing to call Jenkins as a trial witness, Freeman does not assert that Jenkins was willing to testify or that he even talked to Jenkins to ask if he would be willing to testify. Further, Freeman fails to allege a reason why Jenkins would be willing to admit that he was involved in the crime.

¶47 Based on the foregoing, we conclude that Freeman alleged sufficient facts in his postconviction motion to require a ***Machner*** hearing regarding his allegation that trial counsel was ineffective for failing to investigate and call Chisholm as a witness. However, we affirm the postconviction court's determination that Freeman did not adequately allege that trial counsel was ineffective for failing to investigate and call Jenkins as a witness.

### Multiplicity and duplicity

¶48 Freeman asserts that trial counsel was ineffective for not arguing that the charges of both burglary and felon in possession of a firearm present both a multiplicity problem and a duplicity problem because he was charged twice for

---

[17] We acknowledge that with respect to trial counsel's knowledge of the potential witnesses, Freeman does not clearly allege a time when either he or Glover told trial counsel about potential testimony from Chisholm or Jenkins. Nonetheless, as noted, Freeman is a *pro se* litigant and we generally grant "a degree of leeway" to the filings of such litigants. *See **State ex rel. Wren v. Richardson***, 2019 WI 110, ¶25, 389 Wis. 2d 516, 936 N.W.2d 587. Thus, since Freeman's motion can be interpreted as indicating that trial counsel was advised about the potential testimony of Chisholm and Jenkins before trial, we accept that construction. *See **id.*** ("[W]e construe *pro se* petitions, motions, and briefs to make the most intelligible argument we can discern ….").

one firearm and the charges stem from one criminal episode. Freeman cites several cases, including *State v. Moffatt*, 2000 WI 130, 239 Wis. 2d 629, 619 N.W.2d 918, and *State v. Chambers*, 173 Wis. 2d 237, 496 N.W.2d 191 (Ct. App. 1992). This assertion is a repetition of the assertion that Freeman made in his postconviction motion. The postconviction court summarily rejected the assertion as being without basis in the law.

¶49 Freeman merely makes the conclusory statement that the burglary and felon in possession are multiplicitous and duplicitous. However, he does not develop any argument or do anything more than string cite the cases, without discussion or any explanation of how they support his position. If we were to address Freeman's contentions of multiplicity and duplicity, we would have to first develop arguments for Freeman, which we decline to do. *See State v. Pettit*, 171 Wis. 2d 627, 492 N.W.2d 633 (Ct. App. 1992) ("We cannot serve as advocate and judge."); *State ex rel. Wren v. Richardson*, 2019 WI 110, ¶25, 389 Wis. 2d 516, 936 N.W.2d 587 ("[W]e do not impute to pro se litigants the best argument they could have, but did not, make.").

¶50 Therefore, this component of Freeman's ineffective assistance of trial counsel claim does not establish a basis for relief.

¶51 To summarize, with respect to Freeman's ineffective assistance of counsel claim, we conclude that the postconviction court erred when it failed to conduct a *Machner* hearing on that aspect of the claim premised on trial counsel's alleged failure to investigate and to call Chisholm as a witness. With respect to Freeman's other allegations of ineffective assistance we affirm the postconviction court's decisions denying the motions for the reasons stated above.

¶52 To be clear, this court is neither finding that trial counsel's performance was deficient, nor that Freeman suffered any prejudice. We note that in *State v. Sholar*, 2018 WI 53, 381 Wis. 2d 560, 912 N.W.2d 89, our supreme court stated:

> [W]hen an appellate court remands for a *Machner* hearing, it must leave both the deficient performance and the prejudice prongs to be addressed, because whether a defendant was prejudiced depends upon the existence of deficient performance. If trial counsel testifies at the *Machner* hearing that the choice under attack was based on a trial strategy, which the circuit court finds reasonable, it is "virtually unassailable" and the ineffective assistance claim fails.

*Sholar*, 381 Wis. 2d 560, ¶54 (citations omitted). We are merely remanding this case to the postconviction court for an evidentiary hearing regarding Freeman's allegations that trial counsel was ineffective in representing him because he did not investigate and call Chisholm as a trial witness.

## IV. Ineffective assistance of appellate counsel

¶53 Freeman also argued that his appellate counsel was ineffective for not raising the issues Freeman has raised *pro se*, regarding his trial counsel being ineffective for not timely submitting a witness list that included Harrington and Gray, and in his motion for reconsideration, for not investigating and calling Chisholm and Jenkins as trial witnesses.

¶54 We need not address whether appellate counsel was ineffective for failing to assert that trial counsel was ineffective for not raising issues that we have resolved against Freeman: namely, that he is not entitled to relief on his allegations that trial counsel was ineffective for not timely filing a witness list, not investigating and calling Jenkins as a witness, not challenging that the armed

21

burglary and possession of a firearm as a felon were multiplicitous or duplicitous, and that challenging the jurisdiction of the court on the ground that the amended information was not timely filed. Appellate counsel cannot be ineffective for failing to raise the issue of ineffective trial counsel if trial counsel himself was not ineffective. *See State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 677-78, 556 N.W.2d 136 (Ct. App. 1996) (concluding that appellate counsel's failure to argue a meritless issue on appeal is not ineffective assistance of counsel).

¶55 Because we are reversing and remanding for a *Machner* hearing on the issue of whether trial counsel was ineffective for failing to investigate and call Chisholm as a witness, we need not address whether appellate counsel was ineffective for failing to assert that trial counsel was ineffective for not asserting that trial counsel was ineffective for that reason. The issue whether trial counsel was ineffective will be resolved pursuant to our remand.

## CONCLUSION

¶56 We conclude that Freeman alleged sufficient facts to require a *Machner* hearing regarding trial counsel's failure to call Chisholm as a trial witness and, therefore, we reverse and remand this matter for a *Machner* hearing regarding trial counsel's failure to call Chisholm as a witness. In all other respects, we affirm the trial court's decision.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)(5).